UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Plaintiff,

                               Civil Case No. 17-11721

v.                              Honorable Linda V. Parker

VITAL COMMUNITY CARE, P.C., et al.

     Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS

     Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm")

brings this action against multiple defendants that it alleges engaged in a scheme to

submit fraudulent bills and false documentation for treatment and services that

were never performed or were not medically necessary.  State Farm alleges the

following claims in its Complaint: (1) common law fraud; (2) unjust enrichment;

(3) violations of the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1962(c); (4) RICO conspiracy in violation of 18 U.S.C.

§ 1962(d); and (5) declaratory judgment under 28 U.S.C. § 2201 with respect to

State Farm's obligation to pay unpaid claims and charges submitted by Defendant

Vital Community Care, P.C., Advanced Pain Specialists PLLC, Affiliated

Diagnostic of Oakland, LLC, Insight Diagnostics LLC, and Get Well Medical Transport Company.  (ECF No. 1.)

The matter presently is before the Court on Defendants' joint motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 21.) The parties have fully briefed the motion.  (ECF Nos. 24, 27.)  Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument with respect to Defendants' motion pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.     Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Where a pleading alleges fraud, the Federal Rules of Civil Procedure impose a heightened pleading requirement.  *See* Fed. R. Civ. P. 9(b) (providing that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  To meet Rule 9(b)'s particularity requirement, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were

fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (internal quotations and citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## II.  Background[1]

State Farm is an insurance corporation that does business in Michigan.  In this action, State farm is suing fifteen defendants it claims played a role in the alleged insurance fraud scheme: (1) Vital Community Care, P.C. ("Vital"); (2) Amanda Makki, a/k/a Amanda Bazzi, a/k/a Amale Bazzi ("Bazzi"); (3) Namir D. Zukkoor, M.D.; (4) Martin Bloda, M.D.; (5) Mark J. Brennan, M.D.; (6) Affiliated Diagnostic of Oakland, LLC ("Affiliated"); (7) Insight Diagnostics, LLC ("Insight"); (8) Warren J. Ringold, M.D.; (9) Nesreen Bazzi; (10) Ahmad Makki, a/k/a Mike Makki; (11) Advanced Pain Specialists, PLLC ("Advanced Pain"); (12) Ricardo D. Borrego, M.D.; (13) Jason A. Bitkowski, D.O.; (14) Hala Moussa, a/k/a

---

[1] The facts set forth in this section are derived solely from State Farm's Complaint.

Hala Makki ("Moussa"); and (15) Get Well Medical Transport Company ("Get Well").

According to State Farm, Bazzi and Borrego are at the center of the alleged scheme and created and/or rely on the remaining defendants to carry out the scheme. The scheme is executed pursuant to—what State Farm has coined—a "Predetermined Protocol." In accordance with this Predetermined Protocol, patients eligible for No-Fault Insurance Benefits are examined, diagnosed, and referred for treatment, testing, devices, and services to recoup the maximum possible payments from insurance companies, rather than their necessity to address the unique medical needs of the patient.

State Farm alleges that Bazzi created Vital in January 2014, to examine, re-examine, diagnose, and refer persons eligible for No-Fault Benefits for services from other providers owned and controlled by Bazzi or from whom she receives unlawful kickbacks or has fee-splitting arrangements. Zukkoor is identified on paper as Vital's owner; however, State Farm contends that this is to conceal Bazzi's actual ownership and control of the entity. Zukkoor, Bloda, and other doctors work at Vital, examining, diagnosing, and referring patients under the alleged fraudulent insurance scheme.

These physicians refer Vital's patients for physical therapy, to Affiliated and Insight for magnetic resonance imaging services ("MRIs"), and to Brennan for

electro-diagnostic tests ("EDX Tests").  Ringold and Nesreen Bazzi (Amanda

Bazzi's daughter) own Affiliated and Insight; however, State Farm alleges that

Bazzi secretly owns and/or controls both entities.  Mike Makki, Amanda Bazzi's

brother, manages the day-to-day operations of Affiliated and Insight.

Vital's doctors also refer patients to Advanced Pain for pain management

consultations, where Borrego and Bitkowski were employed.  State Farm alleges

that "[t]hese pain management consultations served as a pretext for providing

electro-acupuncture devices ("P-STIM Devices") to patients, which were billed to

State Farm each time at a rate of approximately $5,000.  State Farm provides that,

pursuant to a kickback agreement, Bazzi and Vital received twenty percent (20%)

of the amounts Advanced Pain collected for these pain management consultations

and P-STIM Devices.  State Farm alleges that it was billed for similar unnecessary

medical consultations and devices from numerous other medical practices not

named in this lawsuit, but related to Bazzi.

Physicians working for Vital also routinely found patients to be disabled

from various activities of daily living, including driving, which enabled Get Well

to bill for transportation services provided to the patients.  In public filings, Hala

Makki is identified as Get Well's sole owner, officer, and manager; however, in

bankruptcy proceedings, Makki represented that she has only a one-third interest in

the company.  Makki previously was married to Amanda Bazzi's first cousin.

State Farm claims that it has paid Defendants more than $750,000 in No-Fault Benefits for services, testing, devices, and treatments that were medically unnecessary or not performed at all.  Attached to the Complaint are various charts State Farm prepared to identify the medically unnecessary services performed (or purportedly performed) by Defendants, which were billed to State Farm.  State Farm also has been billed by Vital, Advanced Pain, Affiliated, Insight, and Get Well for additional charges, which State Farm has not paid.

In its Complaint, State Farm refers to other lawsuits it or other insurance companies have filed against entities—some of which were connected to Amanda Bazzi—allegedly engaged in similar fraudulent No-Fault Benefits billing schemes. (*See, e.g.*, Compl. ¶ 6, n.2.)  In their briefs, the parties refer to additional similar lawsuits.  (*See, e.g.*, Defs.' Br. in Supp. of Mot. at 1, ECF No. 21 at Pg ID 333; Pl.'s Resp. Br. at 4, ECF No. 24 at Pg ID 585.)  Defendants contend that "in an attempt to circumvent the Michigan No-Fault system … State Farm filed numerous proforma lawsuits against Michigan medical practitioners who treat injured automobile victims alleging [the same claims asserted in the pending case]." (Defs.' Br. in Supp. of Mot. at 1, ECF No. 21 at Pg ID 333.)  Defendants never identify any of those other lawsuits by name or case number, with the exception of a case pending before the Honorable Paul Borman: *State Farm Mutual Automobile*

*Insurance Co. v. Pointe Physical Therapy, LLC, et al.*, No. 14-11700 (E.D. Mich. filed April 29, 2014) ("*Pointe* Case").

## III.    Analysis of Defendants' Arguments for Dismissal

### A.    Abstention

Defendants argue that the Court should abstain from deciding State Farm's declaratory judgment claim under various abstention doctrines.  The Court begins its analysis of those arguments by noting the Supreme Court's and Sixth Circuit's warning that "abstention is an 'extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it,'" and that "'only the clearest of justifications' will warrant abstention."  *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813-819 (1976)).  The Court further notes that because they are contesting jurisdiction, Defendants bear the burden of proving that abstention is proper.  *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009).

### 1.    The *Burford* Doctrine

Defendants first assert that the Court should abstain from adjudicating State Farm's declaratory judgment claim under *Burford v. Sun Oil Company*, 319 U.S. 315 (1943).  "*Burford* abstention is used to avoid conflict with a state's administration of its own affairs."  *Rouse*, 300 F.3d at 716.  "It applies only if a

federal court's decision on a state law issue is likely to 'interfere with the proceedings or orders of state administrative agencies.'" *Id.* (quoting *New Orleans Pub. Serv. Inc. v. Council of New Orleans*, 491 U.S. 350, 351 (1989)).

Defendants do not specifically identify a single state administrative proceeding or order with which the pending matter would interfere. In any event, as many district courts have found when rejecting the application of *Burford* abstention in cases similar to the present one, "federal courts regularly decide issues concerning Michigan's no-fault scheme without raising the conflict issues *Burford* abstention is intended to address." *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C.*, No. 14-cv-11521, 2015 WL 4724829, at *17 (E.D. Mich. Aug. 10, 2015); *State Farm Mut. Ins. Co. v. Elite Health Ctrs., Inc.*, No. 16-cv-13040, 2017 WL 877396, at *9 (E.D. Mich. Mar. 6, 2017); *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-cv-1-266, 2014 WL 5427170, at *10 (E.D. Mich. Oct. 24, 2014). As the court reasoned in *Universal Health Group*:

> Every owner or registrant of a motor vehicle in the state of Michigan is required to carry no-fault insurance on the vehicle in question. M.C.L. § 500.3101. Litigation will inevitably ensue on a variety of fronts as a result of automobile accidents. That there are a number of lawsuits in Michigan state courts under no-fault laws does not mean that any claim related to no-fault insurance is a matter of "substantial public import." It means that Michigan residents bring Michigan state law claims in Michigan courts. Moreover, this is not a no-fault case.

2014 WL 5427170, at *10.

9

For these reasons, the Court finds that this is not an exceptional case warranting *Burford* abstention.

### 2. *Colorado River* Abstention

The abstention doctrine identified in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ("*Colorado River*"), permits a federal court to abstain from exercising jurisdiction over a matter "in deference to a parallel state-court proceeding if abstention will best promote the values of efficient dispute resolution and judicial economy." *Gentry v. Wayne Cty.*, No. 10-cv-11714, 2010 WL 4822749, at *2 (E.D. Mich. Nov. 22, 2010) (citing *Colorado River*, 424 U.S. at 817-18; *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998)). The Sixth Circuit has identified two prerequisites for abstention under this doctrine: *Romine*, 160 F.3d at 339-40. First, the court must determine that the concurrent state and federal actions are parallel. *Id.* at 339. Second, the court must consider the factors outlined by the *Colorado River* Court:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained.

*Romine*, 160 F.3d at 340-41 (citing *Colorado River*, 424 U.S. at 818-19).

Because Defendants have identified no specific parallel state action, they fail to demonstrate that the first requirement is satisfied. Defendants assert that "there are ongoing and active cases in Michigan courts between State Farm and the

10

various Defendants, *and/or State Farm insureds*." (Br. in Supp. of Mot. at 15, ECF No. 21 at Pg ID 347, emphasis added.) However, this generalized and conclusory statement does not establish that these purported state court suits in fact are parallel. "Suits are parallel if substantially the *same parties* litigate substantially the *same issues*." *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991) (emphasis added) (citing *LaDuke v. Burlington N. R.R.*, 879 F.2d 1556, 1559 (7th Cir. 1989)). Because Defendants have not identified with specificity any state court case— much less a *parallel* one—the Court finds it unnecessary to analyze the remaining considerations for *Colorado River* abstention.

In short, Defendants fail to demonstrate that *Colorado River* abstention is appropriate.

### 3. *Wilton* and *Brillhart* Abstention

Defendants next turn to the abstention doctrines enunciated in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942) (generally holding that where a suit is pending in state court presenting identical issues governed by state law, a federal court should abstain from entering declaratory relief), and *Wilton v. Seven Falls Company*, 515 U.S. 277 (1995) (holding that the standard for determining whether to exercise such discretion to abstain is highly discretionary). In *Brillhart* and *Wilton*, however, the Supreme Court was addressing whether a

court should dismiss or stay an action where only declaratory relief was sought. *Wilton*, 515 U.S. at 288-90; *Brillhart*, 316 U.S. at 494-95. In the present case, State Farm is seeking declaratory relief *as well as* monetary damages through common law fraud, unjust enrichment, and RICO claims.

As such, this Court finds *Brillhart/Wilton* abstention inappropriate.

### 4. *Scottsdale* Factors

Defendants' last abstention argument is premised on the factors outlined by the Sixth Circuit in *Scottsdale Insurance Company v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008). As State Farm points out, however, abstention under *Scottsdale* is not distinct from abstention under *Wilton*. Instead, the Sixth Circuit in *Scottsdale* was outlining factors district courts should consider in determining whether *Wilton* abstention is appropriate—that is, whether to exercise jurisdiction when only declaratory judgment is sought. Again, because State Farm seeks more than a declaratory judgment in the pending matter, abstention is inappropriate.

### B. Reverse Preemption

Defendants contend that the McCarran-Ferguson Act reverse preempts State Farm's RICO claims. The McCarran-Ferguson Act provides: "The business of insurance, and every person engaged therein shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). The Act further declares: "No Act of Congress shall be

construed to invalidate, impair, or supersede any laws enacted by any State for the purpose of regulating the business of insurance … unless such Act specifically relates to the business of insurance." *Id*. § 1012(b). "The McCarran-Ferguson Act thus precludes application of a federal statute in face of state law 'enacted for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relate to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law." *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (ellipsis and brackets removed) (quoting *Dep't of Treasury v. Fabe*, 508 U.S. 491, 501 (1993)).

The Sixth Circuit has set forth a three-part test for determining whether a federal statute is subject to reverse preemption under the McCarran-Ferguson Act. First, the court must determine whether the federal statute at issue "specifically relates to the business of insurance." *Genord v. Blue Cross & Blue Shield of Mich.*, 440 F.3d 802, 805 (6th Cir. 2006). "If it does, then the McCarran-Ferguson Act, by its own terms, does not permit reverse preemption." *See Riverview Health Ins. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 514 (6th Cir. 2010). If the federal statute does not "specifically relate[] to the business of insurance[,]" the court must then consider two questions: (i) "'whether the state statute at issue was enacted … for the purpose of regulating the business of insurance,'" and (ii) "'whether the application of the federal statute would invalidate, impair, or supersede the state

statute.'" *Id.* (quoting *Genord*, 440 F.3d at 805-06). Reverse preemption applies only if both questions are answered in the affirmative. *Id.* This Court finds it necessary to answer only the last question to resolve whether State Farm's RICO claims are reverse preempted.

A number of courts considering the question in cases factually indistinguishable from the present matter have concluded that the application of RICO would not impair, invalidate, or supersede the state's insurance code. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 68 F. Supp. 3d 744, 753-54 (E.D. Mich. 2014); *Universal Health Grp.*, 2014 WL 5427170, at *8 (citing *State Farm Mut. Auto. Ins. Co. v. Physiomatrix*, No. 12-cv-11500, 2013 WL 509284, at *3 (E.D. Mich. Jan. 12, 2013)); *Warren Chiropractic*, 2015 WL 4724829, at *14; *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 223-25 (E.D.N.Y. 2009); *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 267 (3d Cir. 2007); *see also Riverview Health Ins. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 514 (6th Cir. 2010) ("[I]nsurers still have a cause of action under … federal RICO for fraud perpetrated against them by insureds."). As the court stated in *Physiomatrix*: "When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." 2013 WL 509284, at *3 (quoting *Humana*,

14

525 U.S. at 310).  The courts in the above-cited cases reasoned that the application

of RICO is consistent with Michigan's Insurance Code because both provide civil

remedies for fraud.  *See, e.g., id.*; *Pointe Physical Therapy*, 68 F. Supp. 3d at 751-

52; *Universal Health Grp.*, 2014 WL 5427170, at *8.  Defendants cite no authority

to the contrary and this Court finds the reasoning of the above-cited cases

persuasive.

In summary, the Court concludes that State Farm's RICO claims are not

reverse preempted under the McCarran-Ferguson Act.

### C.  *Jackson v. Sedgwick Claims Management Services*

Defendants also seek dismissal of State Farm's RICO claims, arguing that

the claims are barred by the Sixth Circuit's decision in *Jackson v. Sedgwick Claims*

*Management Services, Inc.*, 731 F.3d 556 (2013).  In *Jackson*, the Sixth Circuit

dismissed the plaintiffs' RICO action based on the defendant's denial of their

workers' compensation claims, holding that the loss or diminution of the benefits

the plaintiffs expected to receive under the workers' compensation scheme did not

constitute injury to "business or property" as required to state a civil RICO

damages claim.  *Id*. at 562.  The court reasoned that the phrase "business or

property" excludes personal injuries, including pecuniary losses therefrom, and

that the Michigan workers' compensation system "provides a framework in which

the employee may obtain compensation for a 'personal injury'—that is, lost wages,

rehabilitation services, and medical expenses." *Id*. at 566. Defendants argue that State Farms' alleged damages similarly arise from its insureds' personal injuries.

In fact, however, State Farm is seeking damages for the monies it paid Defendants for purportedly fraudulent claims. The Supreme Court has provided: "When a commercial enterprise suffers a loss of money[,] it suffers an injury in both its 'business' and its 'property,'" particularly where the commercial enterprise's "property is diminished by a payment of money wrongfully induced[.]" *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339-40 (1979). As recognized by several judges in this District and throughout the United States when resolving this same challenge on indistinguishable facts, the damages State Farm alleges satisfies RICO's "business or property" injury requirement. *See Pointe Physical Therapy*, 107 F. Supp. 3d at 783-84 (citing cases).

In short, *Jackson* does not bar State Farm's RICO claims.

**D.  *Pointe* Case**

Defendants next argue that State Farm's Complaint should be dismissed to the extent it includes parties and claims State Farm could have included in the *Pointe* Case pending before Judge Borman. Defendants, however, fail to explain why State Farm's present action is barred by this other case and the Court is aware of no authority precluding these related actions from continuing simultaneously.

While Defendants mention the doctrines of res judicata and collateral estoppel, they do not attempt to apply either doctrine to any claim or party in this action.

Defendants do refer to the considerations for deciding whether to consolidate actions under Federal Rule of Civil Procedure 42; however, this does not support Defendants' argument for dismissal. Moreover, consolidation is a decision left to the sound discretion of the court. *Hall v. Hall*, -- U.S. --, 138 S. Ct. 1118, 1131 (2018) ("District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases."). Under the Local Rules for the Eastern District of Michigan, all of the judges assigned to the cases for which consolidation is sought must consent to the consolidation. E.D. Mich. LR 42.1(b). Local Rule 42.1 further instructs that motions to consolidate must be filed in the case with the earliest case number (i.e., the *Pointe* Case), with notice of the motion filed in each related case. *Id*. 42.1(a). A review of the docket in the *Pointe* Case does not reflect the filing of a motion to consolidate and no notice of such a motion has been filed here.

In short, Defendants fail to demonstrate why the *Pointe* Case requires dismissal of any party or claim in the present action.

### E.     Federal Rules of Civil Procedure 8 and 9(b)

Defendants next argue that State Farm's Complaint does not satisfy the pleading requirements of Rules 8 or 9(b). This Court finds no reason to spend

17

much time analyzing Defendants' arguments for why State Farm's pleading is insufficient, as these are challenges other defendants have raised unsuccessfully in several similar cases brought by State Farm in which State Farm details the purported fraud scheme in much the same way as it does here.[2] *See, e.g., Pointe Physical Therapy*, 107 F. Supp. 3d at 784-91 (pointing to decisions by other district judges reviewing similar pleadings by State Farm to find the complaint before the court sufficient under Rules 8 and 9(b)); *State Farm Mut. Ins. Co. v. Elite Health Centers, Inc.*, No. 16-cv-13040, 2017 WL 877396, at *7 (E.D. Mich. Mar. 6, 2017) (citing cases) ("Numerous courts have similarly concluded that such documentation and explanation of the fraudulent scheme [as State Farm included in the pending complaint] satisfies Rule 9(b)."); *State Farm Mut. Auto. Ins. Co. v. Radden*, No. 14-cv-13299, 2015 WL 631965, at *1 (E.D. Mich. Feb. 13, 2015) (citing cases) ("Courts in this district have repeatedly held that complaints with these details satisfy Rule 9(b)."); *Warren Chiropractic*, 2015 WL 4724829, at *8 ("Numerous courts have concluded that such documentation and explanation of the fraudulent scheme satisfies Rule 9(b), because it sufficiently puts the defendants on notice of the claims against which they will have to defend.").

---

[2] The denials of the defendants' motions to dismiss in those cases may explain why Defendants here never specifically identify in their motion the "numerous proforma lawsuits" they claim State Farm filed "in an attempt to circumvent the Michigan No-Fault system." *See supra.*

Like the pleadings State Farm filed in these other cases, its Complaint in the present matter (aided by the charts attached thereto) describes in detail, a complex, multi-layered scheme by the fifteen defendants to devise, facilitate, and/or participate in a plan to defraud State Farm of monies through the submission of fraudulent bills. The Complaint places each defendant on notice of their role in the alleged scheme, including the specific misrepresentations they are alleged to have made. The Complaint clearly alleges how each defendant's role is integral to the operation of the fraudulent payment submission scheme as a whole. It also alleges that the scheme began when Bazzi created Vital in early January 2014, and continues presently.

Notably, "[a] party that causes a fraudulent bill to be submitted to an insurer may be as liable for fraud as the person whose name was on the fraudulent submission." *Universal Health Grp.*, 2014 WL 5427170, at *3 (citing *Allstate Ins. Co. v. Etienne*, No. 99-cv-3582, 2010 WL 43383333, at *10 (E.D.N.Y. Oct. 26, 2010)). Further, liability is not limited to those with primary responsibility for the fraudulent scheme, nor to those with a formal position in the enterprise. Instead, one needs to have had only some part in directing the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Finally,

> In cases in which the plaintiff claims that the mails or wires were
> simply used in furtherance of a master plan to defraud, the
> communications need not have contained false or misleading
> information. *See Schmuck [v. United States*, 489 U.S. 705, 715

(1989)].  In such cases, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communication, is sufficient to satisfy Rule 9(b) … Rule 9(b) requires only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.

*In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998) (additional internal citations omitted).

The Court concludes that State Farm's Complaint satisfies the pleading requirements of Rules 8 and 9(b).

**F.    Standing**

Defendants challenge State Farm's standing to bring claims based on its allegation that defendant entities were incorporated to conceal the identity or identities of their real owners.  Defendants argue that State Farm has not suffered any actual or threatened injury due to these misidentifications.

State Farm is not premising any claim on the misidentification of the owner, member, or manager of any entity, however.  Instead, as the Complaint reflects, State Farm has included these allegations to provide context, describe the relationships between defendants and their motives, and demonstrate the integral role each defendant played in the fraudulent scheme.  State Farm does allege an actual injury due to the alleged fraudulent scheme, that is traceable to the fraudulent scheme and can be redressed by the damages and declaratory relief requested.  There is no standing issue.

### G.    Unjust Enrichment

Finally, Defendants assert three reasons why they believe State Farm's unjust enrichment claim must be dismissed.  First, Defendants contend that the claim is dependent on State Farm's common law fraud claim, which must be dismissed.  Next, Defendants argue that State Farm fails to identify which Defendants received which benefits as the result of which acts of fraud or conspiracy.  According to Defendants: "The individuals did not submit any bills to State Farm in their individual capacities, and did not receive any benefits from State Farm in their individual capacities."  (Defs.' Br. in Supp. of Mot. at 57, ECF No. 21 at Pg ID 389.)  Lastly, Defendants argue that because State Farm made the payments at issue pursuant to its obligations under express contracts, any right to reimbursement arises from the contracts.  An unjust enrichment claim cannot survive where there is an express contract covering the same subject matter.

The Court already rejected Defendants' arguments to support dismissal of State Farm's fraud claim and thus there is no merit to its first argument. Defendants cite no authority to support their argument that an unjust enrichment claim can only be brought against a defendant who received a direct payment from the victim of fraud.  A number of courts in fact have found that individual participants in a fraud scheme who benefitted indirectly can be liable under an unjust enrichment theory.  *See, e.g., Elite Health Ctrs.*, 2017 WL 877396, at *8;

*Warren Chiropractic*, 2015 WL 4724829, at \*19; *State Farm Mut. Auto. Ins. Co. v. Kugler*, No. 11-80051, 2011 WL 4389915, at \*12 (S.D. Fla. Sept. 21, 2011) (citing *MetraHealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*, No. 96-2547, 1997 WL 728084, at \*8 (M.D. Fla. Oct. 23, 1997)); *see also In re Automotive Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1021 (E.D. Mich. 2014) (finding that Michigan law does not require a benefit to be conferred directly by the plaintiff to the defendant to support an unjust enrichment claim). In any event, State Farm's Complaint does identify direct benefits to Defendants from State Farm in that State Farm paid for the services billed by Defendants and/or for which Defendants were paid for performing.

With respect to Defendants' third argument, an unjust enrichment claim in fact is precluded by the existence of an express contract, but only where the contract is "'*between the same parties on the same subject matter*.'" *Chrysler Realty Co. v. Design Forum Architects, Inc.*, 544 F. Supp. 2d 609, 617 (E.D. Mich. 2008) (quoting *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 903-04 (Mich. Ct. App. 2006) (emphasis in original)); *see also KSR Int'l Co. v. Delphi Auto. Sys., LLC*, 523 F. App'x 357, 363 (6th Cir. 2013) ("[A] contract will not be implied if there is an express contract between the same parties on the same subject matter."). The contracts Defendants point to—State Farm's no-fault insurance policies—are between State Farm and its insureds, not any defendant. Moreover,

those insurance policies do not concern the same subject matter as this lawsuit. State Farm is seeking recovery of payments it made as a result of the alleged fraudulent scheme.  It is not seeking to enforce any contractual rights under its no-fault policies.

To summarize, the Court rejects Defendants' arguments in support of their request to dismiss State Farm's unjust enrichment claim.

### IV.    Conclusion

For the reasons stated, the Court concludes that State Farm's Complaint is not subject to dismissal pursuant to Rule 12(b)(6).

Accordingly,

**IT IS ORDERED** that Defendants' Joint Motion to Dismiss (ECF No. 21) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 14, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 14, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager